# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-09-00640-CV

### In re Guaranty Insurance Services, Inc.

### ORIGINAL PROCEEDING FROM TRAVIS COUNTY

## DISSENTING OPINION

I respectfully dissent. The trial court and the majority have failed to apply the appropriate standard for granting a motion to disqualify under these circumstances. The movant conceded that (1) the firm's screening procedures were adequate, and (2) there was no evidence that the paralegal disclosed confidences to the firm. The movant, the trial court, and the majority take the position that the fact that the paralegal worked on the case for opposing sides, by itself, mandates disqualification of the second firm as a matter of law without consideration of the circumstances, what the second firm did or knew, or what the paralegal did. I do not believe this to be the standard for disqualification as articulated in *Phoenix Founders, Inc. v. Marshall*, 887 S.W.2d 831 (Tex. 1994).

The Texas Supreme Court in *Phoenix Founders* articulated a more flexible and fact-based test. The supreme court stated that a trial court should examine the circumstances of a non-lawyer's employment at an opposing firm to determine whether the "practical effect of formal screening has been achieved." 887 S.W.2d at 835 (quoting *In re Complex Asbestos Litig.*, 283 Cal. Rptr. 732, 747 (Cal. Ct. App. 1991)). The court stated that the factors bearing on such a

determination will generally include "the substantiality of the relationship between the former and current matters; the time elapsing between the matters; the size of the firm; the number of individuals presumed to have confidential information; the nature of their involvement in the former matter; and the timing and features of any measures taken to reduce the danger of disclosure." *Id.* at 836. The supreme court made a point of noting that "ordinarily . . . disqualification is not required as long as 'the practical effect of formal screening has been achieved.'" *Id.* at 835 (quoting *In re Complex Asbestos Litig.*, 283 Cal. Rptr. at 747). According to the supreme court, the ultimate question in weighing these factors is whether the second law firm "has taken measures sufficient to reduce the potential for misuse of confidences to an acceptable level." *Id.* at 836.

The trial court, here, did not weigh any factors or make any determination as to whether the practical effect of formal screening had been achieved or whether Strasburger & Price had taken measures sufficient to reduce the potential for misuse of confidences to an acceptable level. The reason for this is that the trial court labored under the same misconception as the majority—that simply because a non-lawyer does some "work" on the same litigation at opposing firms the second firm must be disqualified as a matter of law. This misconception is a result of a misreading of *In re American Home Products Corp.*, 985 S.W.2d 68 (Tex. 1998). In *American Home Products*, the Texas Supreme Court reaffirmed the rule articulated in *Phoenix Founders* that there is a presumption of shared confidential information when a non-lawyer goes to work for an opposing firm, but this presumption is rebuttable. *See* 985 S.W.2d at 75. The supreme court held that disqualification was appropriate in the *American Home Products* case because the second firm did not rebut the presumption of shared confidences. *See id.* The court noted that the only evidence

2

offered to rebut the presumption that confidences were shared was evidence that the legal assistant in that case did not *possess* confidential information. *See id.* This is not evidence that will rebut the presumption that confidences were shared. It is evidence that the employee did not *obtain* confidential information. However, there is a conclusive (non-rebuttable) presumption that a non-lawyer employee will obtain confidential information when employed by a law firm. Thus, it is pointless for a firm resisting a disqualification motion to attempt to demonstrate that confidences were not obtained. "While the presumption that a legal assistant obtained confidential information is not rebuttable, the presumption that information was shared with a new employer may be overcome." *Id.*

This distinction was crucial in *American Home Products* because the firm resisting disqualification did not put on evidence of the factors outlined by the supreme court, but only put on evidence on a point that was governed by a conclusive presumption. Under such circumstance, there was no need to weigh the evidence pertaining to the factors bearing on whether "sufficient precautions have been taken to guard against any disclosure of confidences" because there was no evidence presented on those factors. In both *American Home Products* and *Grant v. Thirteenth Court of Appeals*, 888 S.W.2d 466 (Tex. 1994)—decided by the supreme court the same day as *Phoenix Founders*—the court noted that the firm resisting disqualification put on no evidence of reasonable steps to screen the legal assistant from being in a position to reveal confidences or to instruct the legal assistant not to work on the matter in question once it was known that she had worked on the same matter at another firm. *See American Home Prods.*, 985 S.W.2d at 76;

3

*Grant*, 888 S.W.2d at 468.  In *Grant*, the supreme court pointed out that the standard laid out in

*Phoenix Founders* is based on the standard adopted by the American Bar Association that provides:

> The nonlawyer should be cautioned . . . that the employee should not work on any matter on which the employee worked for the former employer . . . . *When the new firm becomes aware of such matters*, the employing firm must also take reasonable steps to ensure that the employee takes no action and does no work in relation to matters on which the employer worked in the prior employment, absent client consent after consultation.

*Grant*, 888 S.W.2d at 467-68 (quoting ABA Comm. on Ethics and Prof'l Responsibility, Informal

Op. 1526 (1988)) (emphasis added).

Strasburger & Price put on evidence of its screening procedures, its actions to ensure

confidential information was not shared immediately upon learning of the legal assistant's prior

work, the size of the firm, the passage of time between the legal assistant's work on one side of the

litigation and his work for Strasburger & Price, the nature of the work, and the fact that no

confidences were actually shared.  The salient point is, under *Phoenix Founders*, that this is a fact-

intensive inquiry that focuses on whether the practical effect of formal screening has been achieved.

According to the Texas Supreme Court in *Phoenix Founders*:  "The ultimate question in weighing

these factors is whether [the firm to be disqualified] has taken measures sufficient to reduce the

potential for misuse of confidences to an acceptable level."  887 S.W.2d at 836.  The trial court did

not weigh the evidence on these factors or make a finding on the relevant issue because the movant

persuaded the court (as well as the majority) that disqualification was mandatory without regard to

the *Phoenix Founders* factors on the basis that the standard could be ignored where the legal assistant

4

did some work on the same litigation at both firms—regardless of the nature of the work and regardless of whether confidences were actually shared. This is not the standard, nor should it be.

This point can be illustrated by considering two hypothetical examples. Suppose a legal assistant working at firm A sorts and labels exhibits for a variety of motions on a particular piece of litigation. That legal assistant leaves firm A, works for firm B for a time, is unemployed for a time, and two years later is hired by firm C, which was and still is opposing counsel on the litigation the assistant did some work on sorting and labeling exhibits at firm A. Firm C has completely appropriate and adequate conflict screening procedures, but the legal assistant does not immediately remember the style of the litigation that might generate a conflict. The legal assistant is given the job of summarizing depositions in the litigation—depositions that had not been taken at the time of the previous employment at firm A. The legal assistant summarizes ten of these depositions before realizing that the litigation is, in fact, the same litigation as that at firm A. The legal assistant alerts the management of firm C, shares no confidences, and confirms that no confidences have been shared with anyone, and the firm immediately takes steps to screen the legal assistant and be sure that no confidences get shared and that no harm is done. Under the majority's reading of *American Home Products*, this example will necessarily result in disqualification of firm C as a matter of law because the legal assistant "worked on both sides of the litigation." Under the majority's analysis, this is true regardless of the nature of the work, whether confidences were shared, and whether there is any harm done due to the misuse (or any use) of a confidence. This type of example, however, does not warrant disqualification and is precisely the type of situation contemplated by the supreme court in *Phoenix Founders* when it laid out factors

that a court should consider when there is evidence that might rebut the presumption of shared confidences and evidence that would support a finding that the practical effect of formal screening has been achieved.

Another example is more pointed. If the standard were as the majority holds, there would be an incentive not just for dilatory tactics, but truly unacceptable tactics. If disqualification is mandatory as a matter of law simply because a legal assistant "works on both sides of a case," without more (such as evidence that there was a disclosure of confidences or, at a minimum, evidence of a genuine threat of disclosure of confidences), the right litigation with enough in controversy and enough adversity between the parties and lawyers could generate an intentional delivery of a legal assistant for the purpose of disqualifying a firm. Under the majority's version of the rule, there would never be a need for a lawyer to accept a confidence, misuse a confidence, or even be involved in the circumstances at all. A legal assistant could simply apply for a job, get hired, find a way to get assigned to the particular litigation at issue, do some work, and the firm is disqualified. This, of course, is not the standard articulated by the supreme court, nor could it be.

The simple fact that a non-lawyer "worked" on both sides of a case or piece of litigation cannot be, by itself, the only relevant inquiry for the harsh remedy of disqualification. The nature of the "work" could be anywhere on the spectrum of entirely inconsequential to crucial to the outcome of the litigation. It could involve the sharing of very important confidential information or the sharing of no confidential information. If there is some evidence presented to overcome the presumption of shared confidences, there must be some examination of what the non-lawyer did, what confidences were or might have been imparted, what the circumstances were, etc. In

6

essence, there must be an inquiry into whether what the non-lawyer did and what the second firm did resulted in at least potential harm to the party for whom the non-lawyer worked in the first instance—e.g. the disclosure of confidences or evidence demonstrating a genuine threat of the disclosure of confidences. When a firm comes forward with evidence to rebut the presumption of shared confidences and puts on evidence that the practical effect of formal screening has been achieved, it is up to the courts to weigh the factors set out in *Phoenix Founders*. The simple, unexamined fact that a paralegal "worked" on the same litigation at opposing firms is not a dispositive fact for the purposes of disqualification. The harm to be protected against is not "work" on a case. It is the misuse of confidences. The majority's view of how this type of case gets resolved amounts to a new conclusive (non-rebuttable) presumption that if a non-lawyer works on a case for opposing firms *in any capacity and under any circumstances*, there have been shared confidences. This is not the standard articulated in *Phoenix Founders*. Creating this new conclusive presumption effectively negates the standard actually set out in *Phoenix Founders* that allows for an examination of the evidence and factors bearing on the issue that matters—the sharing and misuse of confidences.

Where there is evidence in the record on the rebuttable presumption of whether confidences have been shared, the court is required to weigh the evidence against the factors set out in *Phoenix Founders*, and determine whether the firm to be disqualified has taken sufficient measures to reduce the potential for misuse of confidences to an acceptable level *under the circumstances presented*. This is the lesson and standard set out in *Phoenix Founders*. It is a sensible standard—both flexible and responsive to what can be a wide range of circumstances. It

7

is designed to allow courts to assess the circumstances involved in situations like this before imposing the extremely harsh sanction of disqualification.

The majority states that "whether or not confidential information was actually disclosed is immaterial, as the 'test for disqualification is met by demonstrating a genuine *threat* of disclosure, not an actual materialized disclosure,'" citing *Grant v. Thirteenth Court of Appeals*, 888 S.W.2d at 467. *Grant* did not hold that the question of whether or not confidences were actually disclosed was immaterial. The *Grant* court held that the evidence presented in that case did not overcome the presumption of an "unacceptable danger of a prohibited disclosure." 888 S.W.2d at 467-68. It is one thing to fail to demonstrate that confidences were not shared—i.e. rebut the presumption—such that it is unknown whether confidences were shared and there is still a genuine threat that they might have been. It is altogether a different matter to demonstrate either conclusively or by a preponderance of the evidence or by concession of your opposing party that, in fact, confidences were not shared and there is no danger that they might have been shared. Such evidence will rebut the presumption of shared confidences and satisfy the standard. Whether confidences were shared is not only material, it is the operative and dispositive fact. The holding in *Grant* goes to the burden of proof of that fact. The party seeking disqualification need only show that there is a genuine threat of disclosure of confidences (such as by showing that a non-lawyer worked on the same litigation at both firms). At that point, the burden shifts to the party resisting disqualification to rebut the presumption of shared confidences and affirmatively demonstrate that no confidences were shared and that the potential for misuse of confidences has been reduced to an acceptable level. *See id.* This includes institutional safeguards designed to prevent disclosure of confidences. If the

8

party resisting disqualification does not carry its burden, as it failed to do in *Grant*, disqualification will be required. The teaching of *Grant* is that the firm to be disqualified cannot simply have its lawyers testify that they did not receive confidences and thereby rebut the presumption recognized in *Phoenix Founders*. There must be proof of institutional safeguards in place or something more than the word of the lawyers involved to demonstrate that the threat of disclosure has been reduced to an acceptable level. *See id.*

When, as here, the movant concedes no confidences have been shared, it is difficult to imagine exactly what the potential is for misuse of confidences. As noted by the supreme court, "[a]s with any disqualification motion, the trial court must adhere to an exacting standard so as to discourage any use of a disqualification motion as a dilatory tactic." *Id.* Considering the concessions made by the movant here that Strasburger & Price's screening procedures were adequate and that no confidences were shared, it is fair to wonder what purpose the motion to disqualify or an order of disqualification serves. No harm is articulated by the movant. No prejudice is shown. In fact, a lack of prejudice or harm is conceded. There is no real reason for disqualification shown on this record. How an actual concession on the part of the party seeking disqualification that no confidences were shared and no harm done does not satisfy the concern that is at the heart of this type of inquiry is not explained by the majority.

Disqualification of a firm in a case like this where so much has been invested in counsel is no minor matter. It can have not only substantial impacts on the parties, but potentially catastrophic impacts both from a financial standpoint as well as a temporal standpoint. It is not a sanction to be imposed on parties lightly or without just cause demonstrated on the record.

9

Nevertheless, the majority concludes that the *Phoenix Founders* standard is not flexible enough to account for this type of situation and allow the courts to arrive at a more just outcome. I do not think the trial court or the majority here have correctly applied the standard for disqualification articulated by the Texas Supreme Court.

It is altogether possible, if not likely, that if the trial court understood that it could weigh the evidence and the *Phoenix Founders* factors, it would have come to a different conclusion with respect to disqualification. I would reverse the order of disqualification and remand to the trial court for further proceedings and application of the appropriate standard for weighing the evidence pertaining to disqualification.

_____

G. Alan Waldrop, Justice

Before Chief Justice Jones, Justices Waldrop and Henson

Filed: April 16, 2010