NUMBER 13-02-385-CV

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI - EDINBURG 
                                                                                                                      

FORMOSA PLASTICS
CORPORATION, USA,                                                                Appellant,

v.

KAJIMA INTERNATIONAL, INC.,                                               Appellee.
                                                                                                                                      

On appeal from the 135th District Court of Calhoun County, Texas.
                                                                                                                      

O P I N I O N

Before Justices Hinojosa, Yañez, and Castillo
Opinion by Justice Yañez
 
          Following a jury trial in this suit for fraud, the trial court rendered judgment in favor
of appellee, Kajima International, Inc. (“Kajima”). Appellant, Formosa Plastics Corporation,
USA (“Formosa”), challenges the trial court’s judgment by nine issues. We sustain
appellant’s third issue and hold that the trial court erred in refusing to disqualify Kajima’s
expert witness, A. W. “Chip” Hutchison (“Hutchison”) and his firm, A. W. Hutchison &
Associates, Inc., (“AWH”) on the basis of “side-switching.” Accordingly, we reverse the trial
court’s judgment and remand for a new trial. 
I. Background
          In 1993, Kajima sued Formosa for breach of contract, fraud, quantum meruit, and
negligent representation arising from construction contracts for work Kajima performed at
Formosa’s expansion plant project in Point Comfort, Texas.


 In 1997, following a jury trial,
the trial court rendered judgment for Kajima for $5,591,066.65. Kajima appealed,
contending, among other things, that the trial court erred in refusing to submit a broad form
fraud question. This Court reversed and remanded to the trial court for a new trial. See
Kajima Int’l, Inc. v. Formosa Plastics Corp., 15 S.W.3d 289, 294 (Tex. App.–Corpus Christi
2000, pet. denied). 
          On remand, Kajima non-suited all of its claims except fraud. Following a jury trial,
the trial court rendered judgment in favor of Kajima and awarded it $15,432,123.45 in
actual damages, plus pre-judgment interest of $14,210,269.65 and $403,156.86 in costs. 
This appeal followed. 
II. Disqualification of Kajima’s Expert Witness
A. Background Facts of “Side-Switching” Issue
          In its third issue, Formosa contends the trial court erred in refusing to disqualify
Hutchison as Kajima’s expert witness because of “side-switching.” In 1993, Formosa’s
former outside counsel, Jones, Day, Reavis & Pogue (“Jones Day”), retained Steve
Huyghe, an associate of Hutchison’s at AWH,


 and AWH as Formosa’s consulting experts
in connection with the Kajima lawsuit. On October 4, 1993, Huyghe and an associate met
with lawyers at Jones Day to discuss the suit. Over the next few months, Huyghe and
AWH performed work for Formosa. By the end of December 1993, Formosa had paid
AWH $20,875.89 for work done on the Kajima case. 
          In December 1993, Formosa transferred its defense from Jones Day to Porter &
Hedges. On December 3, 1993, Huyghe met with lawyers from Jones Day and Porter &
Hedges to discuss the case. In April 1994, Porter & Hedges told Huyghe that his work for
Formosa was “on hold.”
          A few months later, in August 1994, Kajima’s lead counsel contacted Huyghe about
AWH working on the case for Kajima. Huyghe notified Margaret Kelihar, an attorney at
Jones Day, Formosa’s former counsel, that he had been contacted by Kajima. Kelihar
testified she told Huyghe his knowledge and involvement in the case “would make it difficult
for him to represent the other side” and advised him to notify Porter & Hedges. Huyghe
did not notify Porter & Hedges or Formosa. Formosa did not learn that Hutchison and
Brian Rogers (also of AWH) had been designated as Kajima’s testifying experts until
September 19, 1995. Several weeks later, on October 4, 1995, Formosa filed a motion to
strike Hutchison and AWH as Kajima’s expert witnesses for “side-switching.” Following a
hearing, the trial court denied Formosa’s motion. 
B. Kajima’s Arguments 
          In response to Formosa’s “side-switching” argument, Kajima argues the trial court
was not required to disqualify Hutchison because: (1) even though Formosa initially shared
some non-confidential information with Huyghe, who worked for A. W. Hutchison of
California, no conflict exists between the work initially performed by Huyghe for Formosa
and the work later performed by Hutchison for Kajima because Hutchison worked for AWH,
a separate corporate entity based in Atlanta; (2) any information given to Huyghe by
Formosa was discoverable and thus was not confidential; (3) Formosa did not directly
share confidential information with Hutchison or Huyghe; and (4) the attorney vicarious-qualification rules do not apply to expert firms.
C. Standard of Review and Applicable Law
          We review a trial court’s decision on whether to disqualify an expert witness for an
abuse of discretion. See Koch Ref. Co. v. Jennifer L. Boudreaux MV, 85 F.3d 1178, 1181
(5th Cir. 1997). Disqualification of an expert that switches sides in a lawsuit is an issue of
first impression in Texas. However, the Fifth Circuit has addressed the test courts should
apply when determining whether to disqualify an expert witness who has previously been
retained to consult with another party. See id. 
          In Koch, the Fifth Circuit adopted the two-part test adopted by the majority of courts
that have considered the issue: (1) was it objectively reasonable for the first party who
claims to have retained the expert to conclude that a confidential relationship existed
between that party and the expert; and (2) did the first party disclose any confidential or
privileged information to the expert? Id.; see also, e.g., Turner v. Thiel, 553 S.E.2d 765,
768 (Va. 2001) (adopting and applying two-part test to disqualify expert in medical
malpractice case); Mitchell v. Wilmore, 981 P.2d 172, 175-77 (Colo. 1999) (applying two-part analysis to disqualify car accident reconstruction expert); Nelson v. McCreary, 694
A.2d 897, 903-04 (D.C. 1997) (applying two-part test to deny disqualification of medical
expert who had been paid by both sides, due to lack of confidential or privileged
information). 
          Courts have the inherent power to disqualify experts. Koch, 85 F.3d at 1181. That
power derives from the necessity to protect privileges which may be breached when an
expert switches sides, and from the necessity to preserve public confidence in the fairness
and integrity of judicial proceedings. Paul v. Rawlings Sporting Goods Co., 123 F.R.D.
271, 277-78 (S.D. Ohio 1988).
          Accordingly, we adopt the two-part expert-qualification test outlined in Koch. See
Koch, 85 F.3d at 1181. The party seeking disqualification bears the burden of proving both
elements of the test. Id. 
          In Koch, the Fifth Circuit noted that in cases where an expert has switched sides, 
no one would seriously contend that a court should permit a consultant to
serve as one party's expert where it is undisputed that the consultant was
previously retained as an expert by the adverse party in the same litigation
and had received confidential information from the adverse party pursuant
to the earlier retention. This is a clear case for disqualification.
 
Id. (quoting Wang Lab., Inc. v. Toshiba Corp., 762 F. Supp. 1246, 1248 (E.D.Va.1991)
(citations omitted) (emphasis added)). The Koch court notes that the two-part test thus
applies to “disqualification cases other than those in which the expert clearly switched
sides.”


 Id. (emphasis added). In the present case, Kajima disputes whether Formosa’s
earlier retention and passage of confidential information occurred. Thus, we apply the two-part test outlined in Koch. See id.                
D. Analysis 
          We begin by addressing the first part of the two-part test outlined in Koch: whether
it was objectively reasonable for Formosa to conclude that it had established a confidential
relationship with Huyghe and AWH. We conclude that it was.
          Kelihar testified at the hearing on Formosa’s motion to strike


 that in 1993, Formosa
retained Huyghe and AWH, but that a confidentiality agreement was not considered
necessary because Jones Day had “used [Huyghe] as an expert before.” The record
contains copies of invoices to Jones Day from AWH


 for services rendered for Formosa,
including preparation of a “work plan,” compilation of “key project documents,” review of
“project documentation,” and “discussion with staff.” The record also contains a copy of
a check from Formosa, dated December 21, 1993, in the amount of $20,875.89 to AWH
at its Atlanta office for work on the “Kajima case.” A January 7, 1994 letter to Huyghe from
Formosa refers to invoices from AWH “for services provided to Formosa as requested by
Jones, Day, Reavis & Pogue” and asks about the location of “the work product your
company produced.” In response, a letter from Huyghe identifies the “work product”
produced by the firm as including an “original claims work plan prepared to outline our
proposed method for evaluating the performance of Kajima,” and an “index and review of
documents received to date” from Kajima. An April 15, 1994 letter from Huyghe to an
attorney at Porter & Hedges notes that the “initial assignment” to “review and critique
Kajima’s claim and to research the Formosa records, identifying pertinent documents” has
been completed. Based on this evidence, we hold that it was objectively reasonable for
Formosa to conclude that a confidential relationship existed with Huyghe and AWH. 
          Next, we consider whether Formosa disclosed confidential information to Huyghe. 
Kelihar testified that in several meetings, she discussed with Huyghe: (1) Formosa’s
“strategies for this case and what kind of defense we ought to establish;” (2) information
gathered from interviews of potential witnesses for Formosa and what testimony such
witnesses could provide; (3) which witnesses might be “good” and “bad” for Formosa; and
(4) the amount of money Formosa was willing to expend to settle Kajima’s claims. A letter
dated October 19, 1993 from Huyghe to Jones Day describes AWH’s initial budget
estimate for additional services based on its “knowledge gained to date” from reviewing
Formosa documents and its development of a “claims work plan.” The October 19, 1993
letter is labeled “Privileged & Confidential.” 
           Ken Alexander, a partner with Porter & Hedges, testified that on December 3, 1993,
following Formosa’s transfer of its defense from Jones Day to Porter & Hedges, he met
with Huyghe and several of the Jones Day attorneys. At the meeting, Huyghe said he had
been retained by Formosa. Alexander understood that Formosa had retained AWH and
that Huyghe worked for the firm. Alexander testified that at the meeting, Huyghe made a
case for “what A.W. Hutchison had to offer,” and said that Chip Hutchison had “expertise
to offer to the lawyers in whatever way it was needed to assist with the defense of the
case.” Alexander said that they discussed Kajima’s claims and “the ways in which we
would go about responding to those claims.” Alexander said he considered the information
exchanged at the meeting confidential. Similarly, at the trial in the present case, Alexander 
testified that at the meeting, he discussed confidential information with Huyghe, including 
Formosa’s probable defenses to Kajima’s claims, evidence that might be developed and
had been developed up to that time, matters pertaining to potential witnesses, “strategies,”
and various other confidential matters. 
          Kajima argues that no confidential information was shared with Huyghe, and even
if it was, that such information cannot be imputed to Hutchison. Kajima points to the fact
that Kelihar failed to identify specific confidential documents that Formosa provided to
Huyghe and to Huyghe’s testimony that in all of his meetings with Formosa’s attorneys, he
was not exposed to and did not discuss any information he considered confidential. 
Kajima argues that Huyghe’s work for Formosa was limited to the preparation of a
document index.
          Kajima’s arguments are not persuasive. Huyghe’s statement that he did not discuss
anything with Formosa that he considered confidential is conclusory. See In re Amer.
Home Prods. Corp., 985 S.W.2d 68, 74 (Tex. 1998) (conclusory opinions of witnesses
regarding what is “confidential information” does not raise fact issue). Kelihar’s
uncontroverted testimony that Huyghe discussed Formosa’s defense strategies, potential
witnesses, and willingness to settle establishes that Formosa provided confidential
information to Huyghe. See Koch, 85 F.3d at 1182 (“confidential information” includes
discussion of a party’s strategies in litigation, the kind of experts that the retaining party
expected to employ, a party’s view of the strengths and weaknesses of each side’s case,
the role of each party’s witnesses to be hired, and anticipated defenses). 
          Kajima also argues that even if confidential information was disclosed to Huyghe,
the trial court did not err in allowing Hutchison to testify for Kajima because Huyghe was
employed by A.W. Hutchison of California, Inc., which was a separate entity from
Hutchison’s firm, AWH, in Atlanta.


 
          Huyghe’s own testimony contradicts Kajima’s argument. Huyghe testified that A.W.
Hutchison & Associates, Inc. of California and AWH were both owned by Chip Hutchison. 
At the hearing on the motion to strike, Huyghe also testified as follows:
Q [Formosa’s counsel]: And, again, when you talk about “our professional
team,” you’re including Mr. Chip Hutchison in that, correct?
 
A [Huyghe]: Yes. We have— our company is broken into divisions. We
have an Industrial Division, a team of experts, who have got twenty to thirty
years. And— 
 
Q: And, Mr. Chip Hutchison is part of that team of experts, correct?
 
A: Yes. 
 
. . . .
 
Q: Okay. If you look down on your little logo and so forth on the bottom
there, it says, in big letters, “A.W. Hutchison and Associates, Incorporated,”
and, then, you’ve got, “Atlanta, Los Angeles, Washington, D.C.” under that,
correct?
 
A: Correct.
 
Q: And, these are all part of A.W. Hutchison and Associates, Inc., correct?
 
A: Yes.
 
          In addition, Huyghe’s June 14, 1993 and October 19, 1993 (marked “Privileged and
Confidential”) letters to Jones Day and his April 15, 1994 letter to Porter & Hedges were
copied to Hutchison. Kelihar testified that Huyghe said that by hiring the firm, Formosa
was retaining the option of having Hutchison available to testify, if Formosa so chose. 
Similarly, Alexander testified that Huyghe represented that Hutchison’s expertise was
available to Formosa “in whatever way it was needed to assist with the defense of the
case.” Based on this evidence, it is reasonable to conclude that the information provided
to Huyghe was provided to AWH and to Hutchison.
          At the hearing on Formosa’s motion to strike, former Supreme Court Justice Eugene
Cook testified for Formosa as an expert on rules concerning conflicts of interest and
disqualification of experts and the public policy reasons for such rules. Justice Cook
provided the following testimony:
Q [Formosa’s counsel]: Justice Cook, what is the general rule regarding
disqualifications?
 
A [Justice Cook]: It’s really pretty simple. An expert, like an attorney, is not
permitted to change sides in the middle of a lawsuit. 
 
Q: Why is that?
 
A: There’s several reasons. Probably, one of the most fundamental reasons
is that it— it adversely effects public confidence in your entire legal system. 
If the people out there perceive that you can hire an expert and, later, he can
change sides, it’s going to lower the overall esteem that people have for the
lawyers in this Country and, in fact, the entire system of justice. It’s
fundamentally unfair for one side to hire an expert and for another side to
later come in and hire the same expert to testify against them. And,
probably, a third reason, this is a very simple reason, if it doesn’t pass the
smell test. Lawyers and judges are supposed to avoid the appearance of
impropriety. This clearly does not pass that smell test.
 
. . . .
 
Q: What conclusion have you reached, in your own mind, about whether
A.W. Hutchison and Associates has such a conflict of interest that requires
disqualification?
 
A: My opinion is that it has such a disqualification. My opinion is based upon
the following factors: First, there was testimony, today, that the settlement
authority was disclosed, that the defenses were disclosed. This, clearly, is
confidential information. One of the letters from A. W. Hutchison is stamped,
“privileged and confidential,” which is an admission. In listening to Mr.
Huyghe testify, he talked about a short involvement. He talked about a copy
of everything that comes out of our file goes to the corporate . . .Mr. Chip
Hutchison. He talks about the fact that he was paid over Twenty Thousand
Dollars. He understood his services would be on hold. And, the original
assignment, from what I took down, was to review and critique the Plaintiff’s
claims. If you allow this sort of conduct to stand and for him to testify, you’re
going to create serious doubt on the entire integrity of our legal system.
 
          Hutchison’s testimony involved all aspects of Kajima’s case, including liability,
causation, and damages. He testified that Formosa defrauded Kajima, that Formosa knew
of significant problems with the drawings before it signed contracts with Kajima, that the
problems caused delays, and that the delays resulted in losses to Kajima. Hutchison also
testified regarding the method for calculating Kajima’s damages. We conclude that
Hutchison’s testimony was critical to Kajima’s case. We hold that without his testimony,
the judgment must be reversed and the case remanded for a new trial.
III. The Dissent’s Waiver Argument
          The dissent contends that Formosa waived its right to seek disqualification of
Hutchison and AWH by failing to assert a claim of confidentiality over information Formosa
provided to and the work product created by Huyghe. The dissent argues that “Formosa
had at least five opportunities” to establish the confidentiality of information it provided to
Huyghe, and that by failing to do so, Formosa waived its right to assert a claim of
confidentiality.
          The dissent argues Formosa initially failed to address the confidentiality issue at
several points during the fall of 1993 when Huyghe was performing work for Formosa at
the request of Jones Day. According to the dissent, Formosa missed a fourth “opportunity”
when it transferred its defense from Jones Day to Porter & Hedges in December 1993, and
Porter & Hedges failed to clearly establish confidentiality over information provided to and
work product created by Huyghe. Finally, the dissent argues, Formosa missed its fifth
“opportunity” when it failed to object after “Huyghe reported the initial contact by Kajima.” 
          With respect to Formosa’s failure to address the confidentiality issue with Huyghe
at the outset, we note that Kelihar testified at the hearing on Formosa’s motion to strike
that in 1993, Formosa retained Huyghe and AWH in connection with the Kajima lawsuit. 
She also testified that it “wasn’t necessary for us to enter into a confidentiality agreement
with [Huyghe] before we disclosed confidential information” because Jones Day had “used
[Huyghe] as an expert before.” 
          With regard to the fourth “opportunity,” when Porter & Hedges assumed Formosa’s
defense, Alexander testified he understood that AWH had been retained by Formosa and
that Huyghe worked for the firm. He also testified that until he learned in late September
1995 that Kajima had named Hutchison as its expert, he believed Formosa still retained
the option of using Hutchison in whatever capacity it chose.


 
          The dissent contends Formosa missed a fifth “opportunity” when it failed to object
after Huyghe “reported the initial contact by Kajima.” The record reflects, however, that in
1994, Huyghe “reported” that he had been contacted by Kajima only to Kelihar at Jones
Day, Formosa’s former counsel. Kelihar testified that Huyghe said he had been
approached by Kajima to be an expert and asked her opinion regarding whether the work
he and the firm had earlier performed for Formosa could result in a conflict. Kelihar told
Huyghe she thought he “knew some things that . . . would make it difficult for him to
represent the other side” and that he should contact Porter & Hedges. Huyghe admitted
that he never called Porter & Hedges to let Formosa know that AWH had signed up with
Kajima. Formosa learned that Hutchison and Brian Rogers (also of AWH) had been
designated as Kajima’s testifying experts on September 19, 1995, when Formosa received
Kajima’s supplemental interrogatory responses. Approximately two weeks later, on
October 4, 1995, Formosa filed its motion to strike. The trial court held a hearing on
Formosa’s motion on October 12, 1995. 
          By filing its motion to strike only a few weeks after learning of Kajima’s designation
of experts, Formosa preserved its right to seek disqualification of Hutchison and AWH. 
See In re Amer. Home Prods. Corp., 985 S.W.2d at 73 (delay of less than two months in
filing motion to disqualify counsel did not constitute waiver of right to disqualify) (citing Rio
Hondo Implement Co. v. Euresti, 903 S.W.2d 128, 131 (Tex. App.–Corpus Christi 1995,
orig. proceeding) (holding that two and one-half month delay does not constitute waiver of
right to disqualify)). 
IV. Conclusion
           We hold Formosa met its burden of establishing that: (1) it reasonably concluded
that it had a confidential relationship with Huyghe and AWH; and (2) it disclosed
confidential information to Huyghe and AWH. See Koch, 85 F.3d at 1181. Accordingly,
we hold that the trial court abused its discretion in refusing to disqualify Hutchison as an
expert witness for Kajima. We reverse the judgment of the trial court and remand this case
for a new trial in which neither Hutchison nor any other AWH employee will be permitted
to testify as an expert witness.  
 
                                                                                                                      
                                                               LINDA REYNA YAÑEZ
                                                                           Justice



Dissenting opinion by 
Justice Errlinda Castillo

Opinion delivered and filed this the
10th day of November, 2004.