**In re GUARANTY INSURANCE SERVICES, INC.**

No. 03–09–00640–CV.

Court of Appeals of Texas, Austin.

April 16, 2010.

Larry Parks, Mitchell Williams Long Burner, Austin, TX, Ronald G. Bankston, Kane Russell Coleman & Logan, PC, Houston, TX, for real party in interest.

Amy J. Schumacher, Strasburger & Price, LLP, Dallas, TX, for relator.

Before Chief Justice JONES, Justices WALDROP and HENSON.

## OPINION

DIANE M. HENSON, Justice.

Relator Guaranty Insurance Services ("Guaranty Insurance") has filed a petition for writ of mandamus seeking to vacate the trial court's order disqualifying its counsel. On October 12, 2009, the trial court granted a motion to disqualify Guaranty Insurance's counsel, Strasburger & Price ("Strasburger"), on the ground that a paralegal who had performed work on behalf of Guaranty Insurance while working for Strasburger had also performed work on behalf of the opposing party, Trans–Global Solutions, Inc. ("Trans–Global"), during his previous employment at the law firm of Godwin Pappas Langley Ronquillo, LLP ("Godwin").

▆▆▆ The Texas Supreme Court has held that when a paralegal works on a case at one firm, and then moves to another firm on the opposing side of that litigation, two presumptions come into play. *See Phoenix Founders, Inc. v. Marshall,* 887 S.W.2d 831, 834–35 (Tex.1994). First, there is a conclusive presumption that the paralegal acquired confidential information during his work on the case at the first firm. *Id.* at 834. Second, there is a rebuttable presumption that the paralegal shared confidential information about the case with the members of the new firm. *Id.* at 835. This second presumption may be rebutted by a showing "that sufficient precautions have been taken to guard against any disclosure of confidences." *Id.*

Based on *Phoenix Founders,* the paralegal at issue here is subject to a conclusive presumption that he obtained confidential information about the case while working at Godwin. *See id.* at 834. This presumption cannot be rebutted. *See id.* The primary issue in this proceeding is whether the trial court abused its discretion in determining that Strasburger failed to rebut the second presumption—that the paralegal shared confidential information about the case with his new employer. *See id.* at 835.

▆▆▆ The presumption that confidential information will be imparted to a new employer can be rebutted by a showing that certain precautions have been taken to safeguard client confidences:

Specifically, the newly-hired paralegal should be cautioned not to disclose any information relating to the representation of a client of the former employer. The paralegal should also be instructed not to work on any matter on which the paralegal worked during the prior employment, or regarding which the paralegal has information relating to the former employer's representation. Additionally, the firm should take other reasonable steps to ensure that the paralegal does no work in connection with matters on which the paralegal worked during the prior employment, absent client consent after consultation. *Id.*

At the hearing on the motion to disqualify, Strasburger presented evidence of the extensive conflict-screening procedures it employed in hiring the paralegal, and opposing counsel concedes that Strasburger's conflict-screening process is exemplary. Unfortunately, these precautions did not reveal the potential conflict related to the paralegal's work for Trans–Global while at Godwin, leading him to eventually perform work on behalf of Guaranty Insurance in connection with the same case.[1]

▆▆▆ A firm's screening procedures, however thorough, must actually be effective in order to rebut the presumption of shared information. *See Phoenix Founders,* 887 S.W.2d at 833 ("[D]isqualification is not required if the [second] firm is able to establish that it has *effectively* screened

---

1. The record reflects that during his employment at the Godwin firm, the paralegal reviewed the case file to identify persons with knowledge of relevant facts, prepared an initial draft of Trans–Global's response to Guaranty Insurance's request for disclosure, assisted in document production, and communicated with Guaranty Insurance's counsel. Once employed at Strasburger, the paralegal organized pleadings and documents, and assisted in document production

on behalf of Guaranty Insurance. Trans–Global discovered the conflict when the paralegal at issue sent email correspondence to Trans–Global's counsel on behalf of Guaranty Insurance. The email contained redacted documents in response to a request for production. In a follow-up phone conversation, the paralegal informed counsel for Trans–Global that counsel could call him "on all issues related to the Guaranty case."

the paralegal from any contact with the underlying suit.") (emphasis added).[2] Similarly, the precautions taken must be "sufficient ... to guard against any disclosure of confidences." *Id.* at 835.

■ According to Strasburger, performing a conflicts check and instructing a paralegal not to work on any matter on which he worked during prior employment is sufficient to rebut the presumption of shared confidences, even if the paralegal, after being so instructed, works on such matters anyway. We disagree. It is not merely the act of *instructing* the paralegal to avoid working on both sides of the same litigation that serves to protect client confidences. It is the implication that the paralegal will actually follow the instructions and refrain from doing so. Unless the instructions are followed, they are of no benefit to the clients whose interests are meant to be protected.[3]

The supreme court held in *Phoenix Founders* that, in addition to giving the proper instructions, "the firm should take other reasonable steps to *ensure* that the paralegal does no work in connection with matters on which the paralegal worked during the prior employment." *Id.* (emphasis added). In this case, Strasburger's precautions failed to ensure that the para-

legal refrained from working on the same matters he had worked on at Godwin, and thus failed to effectively guard against the disclosure of confidences.

In a case where, as here, a paralegal worked on both sides of the same litigation, the supreme court held that disqualification was required because the hiring firm did not take "the necessary steps to isolate" the paralegal from the litigation. *In re American Home Prods. Corp.*, 985 S.W.2d 68, 75 (Tex.1998). While the firm in *American Home Products* failed to take any screening measures whatsoever, we find that distinction from the present case to be irrelevant for purposes of our analysis. When a paralegal actually performs work on a case that he had previously worked on for opposing counsel, the necessary steps to isolate him from such litigation were, by definition, not taken.

We recognize the difficult position in which Strasburger finds itself at this stage of the proceedings, and further note the supreme court's warning against using a motion to disqualify as a dilatory tactic. *See Phoenix Founders*, 887 S.W.2d at 836. Strasburger's conflict-screening procedures were nothing if not thorough, but where a paralegal has actually been allowed to work on both sides of the same

---

2. The Texas Supreme Court has since described its holding in *Phoenix Founders* as requiring disqualification "unless the hiring firm *effectively* screens the paralegal from any contact with the suit." *In re Meador*, 968 S.W.2d 346, 353 (Tex.1998) (emphasis added); *see also In re Smith Barney, Inc.*, 975 S.W.2d 593, 599 (Tex.1998) ("[I]n *Phoenix Founders, Inc. v. Marshall*, we held that a law firm's hiring opposing counsel's paralegal did not require the firm's disqualification in the litigation if the paralegal was screened from any contact with the case at the firm."). Here, it is undisputed that the paralegal was not effectively screened from contact with the case.

3. Strasburger also points to its evidence, in the form of affidavits, that no confidential information was actually disclosed. Whether or not confidential information was actually disclosed is immaterial, as the "test for disqualification is met by demonstrating a genuine threat of disclosure, not an actual materialized disclosure." *Grant v. Thirteenth Court of Appeals*, 888 S.W.2d 466, 467 (Tex.1994) (per curiam). As the supreme court pointed out, "any rule focusing on actual disclosure would place a virtually insurmountable burden on the party seeking disqualification, since the only persons who know whether confidences were actually shared will generally be the very lawyers seeking to avoid disqualification." *Id.*

litigation, even the most exhaustive attempts at screening cannot be deemed effective.

Because Strasburger's screening procedure was ineffective to prevent the paralegal at issue here from actually working on both sides of the same litigation, we hold that the trial court did not abuse its discretion in granting the motion to disqualify. *See id.* at 835 (stating that absent client consent, "disqualification will always be required . . . when screening would be ineffective").

Accordingly, the petition for writ of mandamus is denied. *See* Tex.R.App. P. 52.8(a).

Dissenting Opinion by Justice WALDROP.

G. ALAN WALDROP, Justice, dissenting.

I respectfully dissent. The trial court and the majority have failed to apply the appropriate standard for granting a motion to disqualify under these circumstances. The movant conceded that (1) the firm's screening procedures were adequate, and (2) there was no evidence that the paralegal disclosed confidences to the firm. The movant, the trial court, and the majority take the position that the fact that the paralegal worked on the case for opposing sides, by itself, mandates disqualification of the second firm as a matter of law without consideration of the circumstances, what the second firm did or knew, or what the paralegal did. I do not believe this to be the standard for disqualification as articulated in *Phoenix Founders, Inc. v. Marshall,* 887 S.W.2d 831 (Tex.1994).

The Texas Supreme Court in *Phoenix Founders* articulated a more flexible and fact-based test. The supreme court stated that a trial court should examine the circumstances of a non-lawyer's employment at an opposing firm to determine whether the "practical effect of formal screening has been achieved." 887 S.W.2d at 835 (quoting *In re Complex Asbestos Litig.,* 232 Cal.App.3d 572, 283 Cal.Rptr. 732, 747 (1991)). The court stated that the factors bearing on such a determination will generally include "the substantiality of the relationship between the former and current matters; the time elapsing between the matters; the size of the firm; the number of individuals presumed to have confidential information; the nature of their involvement in the former matter; and the timing and features of any measures taken to reduce the danger of disclosure." *Id.* at 836. The supreme court made a point of noting that "ordinarily . . . disqualification is not required as long as 'the practical effect of formal screening has been achieved.' " *Id.* at 835 (quoting *In re Complex Asbestos Litig.,* 283 Cal.Rptr. at 747). According to the supreme court, the ultimate question in weighing these factors is whether the second law firm "has taken measures sufficient to reduce the potential for misuse of confidences to an acceptable level." *Id.* at 836.

The trial court, here, did not weigh any factors or make any determination as to whether the practical effect of formal screening had been achieved or whether Strasburger & Price had taken measures sufficient to reduce the potential for misuse of confidences to an acceptable level. The reason for this is that the trial court labored under the same misconception as the majority—that simply because a non-lawyer does some "work" on the same litigation at opposing firms the second firm must be disqualified as a matter of law. This misconception is a result of a misreading of *In re American Home Products Corp.,* 985 S.W.2d 68 (Tex.1998). In *American Home Products,* the Texas Supreme Court reaffirmed the rule articulat-

ed in *Phoenix Founders* that there is a presumption of shared confidential information when a non-lawyer goes to work for an opposing firm, but this presumption is rebuttable. *See* 985 S.W.2d at 75. The supreme court held that disqualification was appropriate in the *American Home Products* case because the second firm did not rebut the presumption of shared confidences. *See id.* The court noted that the only evidence offered to rebut the presumption that confidences were shared was evidence that the legal assistant in that case did not *possess* confidential information. *See id.* This is not evidence that will rebut the presumption that confidences were shared. It is evidence that the employee did not *obtain* confidential information. However, there is a conclusive (non-rebuttable) presumption that a non-lawyer employee will obtain confidential information when employed by a law firm. Thus, it is pointless for a firm resisting a disqualification motion to attempt to demonstrate that confidences were not obtained. "While the presumption that a legal assistant obtained confidential information is not rebuttable, the presumption that information was shared with a new employer may be overcome." *Id.*

This distinction was crucial in *American Home Products* because the firm resisting disqualification did not put on evidence of the factors outlined by the supreme court, but only put on evidence on a point that was governed by a conclusive presumption. Under such circumstance, there was no need to weigh the evidence pertaining to the factors bearing on whether "sufficient precautions have been taken to guard against any disclosure of confidences" because there was no evidence presented on those factors. In both *American Home Products* and *Grant v. Thirteenth Court of Appeals*, 888 S.W.2d 466 (Tex.1994)—decided by the supreme court the same day as *Phoenix Founders*—the court noted

that the firm resisting disqualification put on no evidence of reasonable steps to screen the legal assistant from being in a position to reveal confidences or to instruct the legal assistant not to work on the matter in question once it was known that she had worked on the same matter at another firm. *See American Home Prods.*, 985 S.W.2d at 76; *Grant*, 888 S.W.2d at 468. In *Grant*, the supreme court pointed out that the standard laid out in *Phoenix Founders* is based on the standard adopted by the American Bar Association that provides:

> The nonlawyer should be cautioned ... that the employee should not work on any matter on which the employee worked for the former employer.... *When the new firm becomes aware of such matters,* the employing firm must also take reasonable steps to ensure that the employee takes no action and does no work in relation to matters on which the employer worked in the prior employment, absent client consent after consultation.

*Grant*, 888 S.W.2d at 467–68 (quoting ABA Comm. on Ethics and Prof'l Responsibility, Informal Op. 1526 (1988)) (emphasis added).

Strasburger & Price put on evidence of its screening procedures, its actions to ensure confidential information was not shared immediately upon learning of the legal assistant's prior work, the size of the firm, the passage of time between the legal assistant's work on one side of the litigation and his work for Strasburger & Price, the nature of the work, and the fact that no confidences were actually shared. The salient point is, under *Phoenix Founders*, that this is a fact-intensive inquiry that focuses on whether the practical effect of formal screening has been achieved. According to the Texas Supreme Court in *Phoenix Founders:* "The ultimate ques-

tion in weighing these factors is whether [the firm to be disqualified] has taken measures sufficient to reduce the potential for misuse of confidences to an acceptable level." 887 S.W.2d at 836. The trial court did not weigh the evidence on these factors or make a finding on the relevant issue because the movant persuaded the court (as well as the majority) that disqualification was mandatory without regard to the *Phoenix Founders* factors on the basis that the standard could be ignored where the legal assistant did some work on the same litigation at both firms—regardless of the nature of the work and regardless of whether confidences were actually shared. This is not the standard, nor should it be.

This point can be illustrated by considering two hypothetical examples. Suppose a legal assistant working at firm A sorts and labels exhibits for a variety of motions on a particular piece of litigation. That legal assistant leaves firm A, works for firm B for a time, is unemployed for a time, and two years later is hired by firm C, which was and still is opposing counsel on the litigation the assistant did some work on sorting and labeling exhibits at firm A. Firm C has completely appropriate and adequate conflict screening procedures, but the legal assistant does not immediately remember the style of the litigation that might generate a conflict. The legal assistant is given the job of summarizing depositions in the litigation—depositions that had not been taken at the time of the previous employment at firm A. The legal assistant summarizes ten of these depositions before realizing that the litigation is, in fact, the same litigation as that at firm A. The legal assistant alerts the management of firm C, shares no confidences, and confirms that no confidences have been shared with anyone, and the firm immediately takes steps to screen the legal assistant and be sure that no confidences get shared and that no harm is done. Under the majority's reading of *American Home Products,* this example will necessarily result in disqualification of firm C as a matter of law because the legal assistant "worked on both sides of the litigation." Under the majority's analysis, this is true regardless of the nature of the work, whether confidences were shared, and whether there is any harm done due to the misuse (or any use) of a confidence. This type of example, however, does not warrant disqualification and is precisely the type of situation contemplated by the supreme court in *Phoenix Founders* when it laid out factors that a court should consider when there is evidence that might rebut the presumption of shared confidences and evidence that would support a finding that the practical effect of formal screening has been achieved.

Another example is more pointed. If the standard were as the majority holds, there would be an incentive not just for dilatory tactics, but truly unacceptable tactics. If disqualification is mandatory as a matter of law simply because a legal assistant "works on both sides of a case," without more (such as evidence that there was a disclosure of confidences or, at a minimum, evidence of a genuine threat of disclosure of confidences), the right litigation with enough in controversy and enough adversity between the parties and lawyers could generate an intentional delivery of a legal assistant for the purpose of disqualifying a firm. Under the majority's version of the rule, there would never be a need for a lawyer to accept a confidence, misuse a confidence, or even be involved in the circumstances at all. A legal assistant could simply apply for a job, get hired, find a way to get assigned to the particular litigation at issue, do some work, and the firm is disqualified. This, of course, is not the standard articulated by the supreme court, nor could it be.

The simple fact that a non-lawyer "worked" on both sides of a case or piece of litigation cannot be, by itself, the only relevant inquiry for the harsh remedy of disqualification. The nature of the "work" could be anywhere on the spectrum of entirely inconsequential to crucial to the outcome of the litigation. It could involve the sharing of very important confidential information or the sharing of no confidential information. If there is some evidence presented to overcome the presumption of shared confidences, there must be some examination of what the non-lawyer did, what confidences were or might have been imparted, what the circumstances were, etc. In essence, there must be an inquiry into whether what the non-lawyer did and what the second firm did resulted in at least potential harm to the party for whom the non-lawyer worked in the first instance—e.g. the disclosure of confidences or evidence demonstrating a genuine threat of the disclosure of confidences. When a firm comes forward with evidence to rebut the presumption of shared confidences and puts on evidence that the practical effect of formal screening has been achieved, it is up to the courts to weigh the factors set out in *Phoenix Founders*. The simple, unexamined fact that a paralegal "worked" on the same litigation at opposing firms is not a dispositive fact for the purposes of disqualification. The harm to be protected against is not "work" on a case. It is the misuse of confidences. The majority's view of how this type of case gets resolved amounts to a new conclusive (non-rebuttable) presumption that if a non-lawyer works on a case for opposing firms *in any capacity and under any circumstances*, there have been shared confidences. This is not the standard articulated in *Phoenix Founders*. Creating this new conclusive presumption effectively negates the standard actually set out in *Phoenix Founders* that allows for an ex-

amination of the evidence and factors bearing on the issue that matters—the sharing and misuse of confidences.

Where there is evidence in the record on the rebuttable presumption of whether confidences have been shared, the court is required to weigh the evidence against the factors set out in *Phoenix Founders*, and determine whether the firm to be disqualified has taken sufficient measures to reduce the potential for misuse of confidences to an acceptable level *under the circumstances presented*. This is the lesson and standard set out in *Phoenix Founders*. It is a sensible standard—both flexible and responsive to what can be a wide range of circumstances. It is designed to allow courts to assess the circumstances involved in situations like this before imposing the extremely harsh sanction of disqualification.

The majority states that "whether or not confidential information was actually disclosed is immaterial, as the 'test for disqualification is met by demonstrating a genuine *threat* of disclosure, not an actual materialized disclosure,'" citing *Grant v. Thirteenth Court of Appeals*, 888 S.W.2d at 467. *Grant* did not hold that the question of whether or not confidences were actually disclosed was immaterial. The *Grant* court held that the evidence presented in that case did not overcome the presumption of an "unacceptable danger of a prohibited disclosure." 888 S.W.2d at 467–68. It is one thing to fail to demonstrate that confidences were not shared—i.e. rebut the presumption—such that it is unknown whether confidences were shared and there is still a genuine threat that they might have been. It is altogether a different matter to demonstrate either conclusively or by a preponderance of the evidence or by concession of your opposing party that, in fact, confidences were not shared and there is no danger that they

might have been shared. Such evidence will rebut the presumption of shared confidences and satisfy the standard. Whether confidences were shared is not only material, it is the operative and dispositive fact. The holding in *Grant* goes to the burden of proof of that fact. The party seeking disqualification need only show that there is a genuine threat of disclosure of confidences (such as by showing that a non-lawyer worked on the same litigation at both firms). At that point, the burden shifts to the party resisting disqualification to rebut the presumption of shared confidences and affirmatively demonstrate that no confidences were shared and that the potential for misuse of confidences has been reduced to an acceptable level. *See id.* This includes institutional safeguards designed to prevent disclosure of confidences. If the party resisting disqualification does not carry its burden, as it failed to do in *Grant,* disqualification will be required. The teaching of *Grant* is that the firm to be disqualified cannot simply have its lawyers testify that they did not receive confidences and thereby rebut the presumption recognized in *Phoenix Founders.* There must be proof of institutional safeguards in place or something more than the word of the lawyers involved to demonstrate that the threat of disclosure has been reduced to an acceptable level. *See id.*

When, as here, the movant concedes no confidences have been shared, it is difficult to imagine exactly what the potential is for misuse of confidences. As noted by the supreme court, "[a]s with any disqualification motion, the trial court must adhere to an exacting standard so as to discourage any use of a disqualification motion as a dilatory tactic." *Id.* Considering the concessions made by the movant here that Strasburger & Price's screening procedures were adequate and that no confidences were shared, it is fair to wonder what purpose the motion to disqualify or

an order of disqualification serves. No harm is articulated by the movant. No prejudice is shown. In fact, a lack of prejudice or harm is conceded. There is no real reason for disqualification shown on this record. How an actual concession on the part of the party seeking disqualification that no confidences were shared and no harm done does not satisfy the concern that is at the heart of this type of inquiry is not explained by the majority.

Disqualification of a firm in a case like this where so much has been invested in counsel is no minor matter. It can have not only substantial impacts on the parties, but potentially catastrophic impacts both from a financial standpoint as well as a temporal standpoint. It is not a sanction to be imposed on parties lightly or without just cause demonstrated on the record. Nevertheless, the majority concludes that the *Phoenix Founders* standard is not flexible enough to account for this type of situation and allow the courts to arrive at a more just outcome. I do not think the trial court or the majority here have correctly applied the standard for disqualification articulated by the Texas Supreme Court.

It is altogether possible, if not likely, that if the trial court understood that it could weigh the evidence and the *Phoenix Founders* factors, it would have come to a different conclusion with respect to disqualification. I would reverse the order of disqualification and remand to the trial court for further proceedings and application of the appropriate standard for weighing the evidence pertaining to disqualification.