IN THE SUPREME COURT OF TEXAS
 
════════════
No. 
10-0364
════════════
 
In re Guaranty Insurance 
Services, Inc., Relator
 
 
════════════════════════════════════════════════════
On Petition for Writ of 
Mandamus
════════════════════════════════════════════════════
 
 
PER CURIAM
 
 
            
What happens when a law firm’s efforts to screen a conflict fail, 
permitting a nonlawyer who worked on one side of a 
case at one firm to work on the other side of the same case at the opposing 
firm? Here, the trial court disqualified the second firm, reasoning there was a 
conclusive presumption that the nonlawyer had shared 
confidential information, despite evidence he had not. A divided court of 
appeals denied mandamus relief. 310 S.W.3d 630, 634. 
Given our prior decisions on the subject—particularly our recent decision in 
In re Columbia Valley Healthcare System, 
L.P., 320 S.W.3d 819 (Tex. 2010) (orig. proceeding), issued four months 
after the court of appeals’ decision below—we conclude disqualification was not 
warranted. Further, because the improper disqualification was a clear abuse of 
discretion for which there is no adequate remedy by appeal, mandamus relief is 
warranted. See In re Prudential Ins. Co., 148 S.W.3d 124, 135–36 
(Tex. 2004) (orig. proceeding) (describing when mandamus relief may issue); 
NCNB Tex. Nat’l Bank v. Coker, 765 S.W.2d 398, 400 (Tex. 1989) (orig. 
proceeding) (granting mandamus in context of improper disqualification). We 
conditionally grant mandamus relief and direct the trial court to vacate its 
disqualification order.
The nonlawyer in this story is paralegal Clyde Williams; the two 
firms are Godwin Pappas Langley Ronquillo, LLP (Godwin 
Pappas) and Strasburger & Price, LLP (Strasburger). Like many corporate battles, the litigation 
underlying this mandamus proceeding was a multi-suit affair. The lawsuit from 
which Strasburger was ultimately disqualified is suit 
number two in the litigation between Trans-Global Solutions, Inc. (Trans-Global) 
and Guaranty Insurance Services, Inc. (Guaranty). Trans-Global first sued 
Guaranty, an insurance agent, for allegedly failing to obtain appropriate 
insurance. Guaranty prevailed and brought suit number two (the underlying suit), 
seeking indemnity for the defense costs it incurred in the first suit. Strasburger represents Guaranty in the underlying suit. 
Trans-Global was first represented by Godwin Pappas in the underlying suit and 
is now represented by Kane Russell Coleman & Logan, PC (Kane 
Russell).
In July 2005, 
Williams began work as a paralegal at Godwin Pappas. While there, he billed a 
total of 6.8 hours in the underlying suit, reviewing the file to identify 
persons with knowledge of relevant facts, preparing an initial draft of a 
response to Guaranty’s request for disclosures, assisting in document 
production, and communicating with opposing counsel. Williams left Godwin Pappas 
in November 2006. The attorneys handling the case left the firm in August 2008 
for Kane Russell, taking the case with them.
            
In October 2008, Williams applied for a paralegal position at Strasburger. In his Employee Application, he identified 
Godwin Pappas as one of his previous employers, and Strasburger ran an initial 
conflicts check, which came back clear. At the firm’s request, Williams 
also identified two potential conflicts due to his previous work on matters in 
which Strasburger represented another party. Strasburger ran a separate 
conflicts check on those and restricted his access to documents related 
to them. Williams attested that he failed to identify the underlying suit as a 
potential conflict because he did not remember having billed any hours for 
it.
            
In addition to the conflicts check, the firm instructed Williams several 
times prior to his work on this case not to disclose confidential information he 
gained during his previous employment—specifically during his orientation, and 
through the Strasburger Employee Information Handbook 
and a confidentiality agreement. Williams signed the handbook and the agreement. 
Both required him to notify his supervising attorney immediately if he became 
aware of a matter on which he previously worked.
            
Williams started work at Strasburger in January 
2009. At that point, the underlying suit was already underway. The trial court 
granted partial summary judgment in Guaranty’s favor that March, determining 
Trans-Global was contractually obligated to indemnify Guaranty for the defense 
costs incurred during the first suit. In July 2009, Williams’s supervising attorney at Strasburger asked him to organize the pleadings and 
discovery in this case. Williams again failed to recognize the conflict and to 
notify the supervising attorney of its existence. In September 2009, Williams 
affixed bates labels to documents produced to Trans-Global and attached 
redacting tape to passages highlighted by an attorney. In total, Williams billed 
about 27 hours on the case at Strasburger.
            
Emails between Strasburger and Kane Russell 
regarding routine discovery matters made reference to Williams as a Strasburger legal assistant. A Kane Russell attorney 
recognized Williams as a former Godwin Pappas employee and notified Strasburger of the conflict. Strasburger immediately instructed Williams to discontinue 
working on the matter, not to view or access any documents related to the case, 
and not to disclose any information he had obtained during his employment with 
Godwin Pappas. Trans-Global moved to disqualify Strasburger. Though Trans-Global disputes this fact before 
our Court, the record is clear that Trans-Global conceded during the 
disqualification hearing that no confidences were actually shared.[1] After conducting that hearing, the trial 
court granted Trans-Global’s motion and entered 
findings of fact and conclusions of law. In brief, it reasoned the journey was 
irrelevant when the final destination included a nonlawyer on both sides of the same case. It held that 
evidence Strasburger instituted a screening procedure 
for nonlawyers was immaterial under Texas law because the screening 
procedure did not prevent Williams from actually working on the opposite side of 
the case. Williams’s actual work on opposite sides 
created a genuine threat of disclosure, which meant he was conclusively presumed 
to have shared confidential information, despite evidence he had not.
            
Guaranty unsuccessfully sought mandamus relief in the court of appeals, 
which essentially agreed with the trial court’s analysis. While conceding Strasburger’s screening procedures were “exemplary,” it 
explained that those procedures, “however thorough, must actually be effective 
in order to rebut the presumption.” 310 S.W.3d at 632 (citing Phoenix 
Founders, Inc. v. Marshall, 887 S.W.2d 831, 833 (Tex. 1994) (orig. 
proceeding)). It reasoned that “where a paralegal has actually been allowed to 
work on both sides of the same litigation, even the most exhaustive attempts at 
screening cannot be deemed effective” and concluded the trial court did not 
abuse its discretion. Id. at 633–34. A 
dissenting justice took the position that a nonlawyer’s actual work on both sides of the case by itself 
did not mandate disqualification of the second firm. Id. at 634 (Waldrop, J., dissenting).
            
Our conflict-of-interest jurisprudence recognizes distinctions between 
lawyers and nonlawyers, their duties, and their 
likelihood of contact with confidential information. We have held that a lawyer 
who has previously represented a client may not represent another person on a 
matter adverse to the client if the matters are the same or substantially 
related. In re Columbia, 320 S.W.3d at 824. If 
the lawyer works on a matter, there is an irrebuttable presumption that the lawyer 
obtained confidential information during the representation. Phoenix 
Founders, 887 S.W.2d at 833. When the lawyer moves 
to another firm and the second firm represents an opposing party to the lawyer’s 
former client, a second irrebuttable 
presumption arises—that the lawyer has shared the client’s confidences 
with members of the second firm. Id. at 834. The 
effect of this second presumption is the mandatory disqualification of the 
second firm. See id. at 
833–34.
            
But the rule is different for nonlawyers. A 
nonlawyer who worked on a matter at a 
prior firm is also subject to a conclusive presumption that confidences 
were obtained. In re Am. Home 
Prods. Corp., 985 S.W.2d 68, 74 (Tex. 1998) (orig. 
proceeding); Phoenix Founders, 887 S.W.2d at 834. This rule serves “to 
prevent the moving party from being forced to reveal the very confidences sought 
to be protected.” In re Am. Home, 985 S.W.2d at 74 
(quoting Phoenix Founders, 887 S.W.2d at 834) (quotation marks 
omitted). However, the second presumption—that confidences were 
shared with members of the second firm—may be rebutted where nonlawyers are concerned. Phoenix Founders, 887 S.W.2d at 835. As applies here, then, there is a 
conclusive presumption that Williams obtained confidential information, but 
Strasburger may be free to rebut the presumption that 
Williams shared those confidences with it. The issue is whether Strasburger can do so in this situation and, if so, whether 
it has.
            
The only way to rebut the rebuttable presumption 
is:
 
(1) to instruct the legal assistant “not to work on any 
matter on which the paralegal worked during the prior employment, or regarding 
which the paralegal has information relating to the former employer’s 
representation,” and (2) to “take other reasonable steps to ensure that the 
paralegal does not work in connection with matters on which the paralegal worked 
during the prior employment, absent client consent.”
 
 
In re Am. 
Home, 985 S.W.2d at 
75 (quoting Phoenix Founders, 887 S.W.2d at 835). A simple, informal admonition to a 
nonlawyer employee not to work on a matter on which he 
worked before is not enough. In re Columbia, 320 S.W.3d 
at 826. And the “other reasonable measures must include, at a minimum, 
formal, institutionalized screening measures that render the possibility of the 
nonlawyer having contact with the file less likely.” 
Id. Thus, effective screening methods may be used to shield the employee 
from the matter in order to avoid disqualification. Id. 
at 824 (citations omitted).
            
But we have never said that ineffective screening measures merited 
automatic disqualification for nonlawyers. On the 
contrary, we have explained that in most cases, disqualification is not required 
provided “the practical effect of formal screening has been achieved.” Phoenix Founders, 887 S.W.2d at 835 (citation 
omitted). In In re Columbia, we 
equated this to “effective screening,” and cited to the six Phoenix Founders 
factors that guide such an inquiry:
 
(1) the substantiality of the relationship between the 
former and current matters; (2) the time elapsing between the matters; (3) the 
size of the firm; (4) the number of individuals presumed to have confidential 
information; (5) the nature of their involvement in the former matter; and (6) 
the timing and features of any measures taken to reduce the danger of 
disclosure.
 
 
320 S.W.3d at 824–25 (citing 
Phoenix Founders, 887 S.W.2d at 836). Whether screening actually works is 
not determinative. Instead, the “ultimate question in weighing these factors” is 
whether the second firm “has taken measures sufficient to reduce the 
potential for misuse of confidences to an acceptable level.” Phoenix 
Founders, 887 S.W.2d at 836 (emphasis added).
            
We have also explained that knowledge of a conflict can be central to 
this analysis:
 
The nonlawyer should be cautioned . . . that the employee should 
not work on any matter on which the employee worked for the former 
employer. . . . When the new firm becomes aware of such 
matters, the employing firm must also take reasonable steps to ensure that 
the employee takes no action and does no work in 
relation to matters on which the employer worked in the prior employment, absent 
client consent after consultation.
 
                                                            

Grant v. Thirteenth Court of 
Appeals, 888 S.W.2d 
466, 467–68 (Tex. 1994) (per curiam) (orig. 
proceeding) (emphasis added) (quoting ABA Comm. on Ethics and Prof’l Responsibility, Informal Op. 1526 (1988)).
            
We reiterated the flexibility of this approach as well as the 
significance of knowledge in In re 
Columbia, which expounded upon the thrust of our prior 
holdings:
 
Despite the screening measures used, the presumption of 
shared confidences becomes conclusive if: (1) information related to the 
representation of an adverse client has in fact been disclosed, (2) screening 
would be ineffective or the nonlawyer necessarily 
would be required to work on the other side of a matter that is the same as or 
substantially related to a matter on which the paralegal has previously worked; 
or (3) the nonlawyer has actually performed work, 
including clerical work, on the matter at the lawyer’s directive if the lawyer 
reasonably should know about the conflict of interest.
 
 320 S.W.3d at 
828. Because Williams actually worked on both sides of this case, the 
third scenario discussed in In re Columbia 
is implicated. Today we clarify, under that scenario: The presumption of 
shared confidences is rebuttable if the nonlawyer has actually performed work on the matter at a 
lawyer’s directive and the lawyer reasonably should not know about the 
conflict of interest. Put differently, if the nonlawyer has actually worked on the matter, the presumption 
of shared confidences is not rebuttable unless the assigning lawyer 
should not have known of the conflict.
            
The question, then, is whether Williams’s 
supervising attorney reasonably should have known that Williams worked on the 
same case at Godwin Pappas before coming to Strasburger. First, on this record, the supervising attorney 
reasonably should not have had such knowledge, rendering the presumption 
rebuttable. Second, Strasburger succeeds in rebutting 
this presumption. We discuss each in turn.
            
Prior to 
Williams’s discovery by a Kane Russell attorney, there 
is no evidence Strasburger was ever notified of the 
conflict. Williams never informed Strasburger that he 
had worked on the suit. And the fact that he worked less than seven hours on the 
case certainly supports Williams’s claim that he 
simply forgot he had engaged with the litigation; the fact that he willingly 
disclosed two other potential conflicts suggests he was not averse to disclosing 
potential conflicts.
            
Further, the conflicts check came back clear. Trans-Global argues Strasburger would have discovered the conflict but for its 
ineffective screening system. We have never required perfection in screening 
conflicts. And as Strasburger points out, Trans-Global 
had changed representation, from Godwin Pappas to Kane Russell, since Williams 
had worked for the other side, and Godwin Pappas had 
itself changed names several times. Aside from its computerized conflicts check, 
Strasburger had specifically asked Williams to 
identify any conflicts of which he was aware. In addition, Trans-Global conceded 
that Strasburger’s system was adequate during the oral 
hearing on the motion to disqualify, at one point stating, “we have no 
complaints about their screening procedure,” and remaining mum when the trial 
court stated that Trans-Global had conceded that Strasburger’s screening methods were sufficient to 
meet the Phoenix Founders and In re American Home standards. 
The failure of a screening method to actually screen a tainted party will not 
translate into disqualification where “the practical effect of formal screening 
has been achieved.” Phoenix Founders, 887 S.W.2d 
at 835 (citation omitted). That effect was achieved here because 
there is no evidence the supervising attorney reasonably should have known about 
the conflict.
            
The screening 
was also effective under the fact-intensive, multi-factor inquiry of Phoenix 
Founders. There was undoubtedly a substantial relationship between the 
former and current matters—they stemmed, after all, from the same litigation. 
However, it is worth noting that by the time Williams first worked on the case 
as a Strasburger employee in July 2009, summary 
judgment had limited the scope of the matter, leaving only the determination of 
the amount of attorney fees from the first suit and whether fees could be 
recovered in the second indemnity suit. The other factors further indicate 
effective screening.[2] Almost two years passed between Williams’s exit from Godwin Pappas and his application to 
Strasburger; another three months after that passed 
before he gained employment there; and another six months after that went by 
before he actually worked on the case. Only one person—Williams—is presumed to 
have confidential information, and Williams’s minimal 
work on the case (less than 34 hours across both firms) also suggests effective 
screening. Finally, the evidence indicates that Strasburger took numerous measures, discussed below, to 
prevent and later to address the danger of disclosure.
            
Strasburger clears the hurdles to 
presumption-rebuttal erected by In re American Home and Phoenix 
Founders. At the outset, via his orientation, the Strasburger Employee Information Handbook, and the 
confidentiality agreement, Strasburger instructed 
Williams not to engage with matters on which he had worked previously. Those 
documents also directed Williams to notify his supervising attorney immediately 
if he realized a conflict. Strasburger also took other 
reasonable steps to ensure Williams did not work on matters from his prior 
employment. Specifically, it had in place formal, institutionalized screening 
procedures, which even the court of appeals noted were “nothing if not 
thorough.” 310 S.W.3d at 633. The trial court similarly 
noted Strasburger had “presented evidence that it had 
instituted a screening procedure for nonlawyers,” and 
even Trans-Global itself stated “we have no complaints about their screening 
procedure.” Strasburger also presented evidence that 
it strictly adhered to its formal screening process when it hired Williams. When 
Williams identified two closed matters on which he had worked and in which Strasburger had also been involved, Strasburger removed his access to those files. Strasburger also ran a conflicts 
check based on Williams’s previous employers, and it 
revealed no additional conflicts. Williams signed a confidentiality agreement, 
certifying that he disclosed the existence of any conflict of interest of which 
he was aware at the time. He also acknowledged receiving, reading, and signing 
the Employee Information Book, which informed him of his duty to keep 
confidential information obtained during his previous 
employment.
            
Further, Williams attested that upon discovering the conflict, Strasburger instructed him not to work further on this case, 
not to access related documents, and not to disclose any information. While such 
a restriction is not a stand-alone requirement for rebutting the presumption, 
these additional steps further distinguish this case from others where we have 
disqualified firms for a nonlawyer’s actual work on 
both sides of a case. For example, in In re 
Columbia, the paralegal had similarly performed limited work on both sides 
of the same case. 320 S.W.3d at 823. But the second law 
firm did not have any formal screening measures in place and, upon realizing a 
conflict existed, did not immediately remove the nonlawyer’s access to the case. Id. In fact, the 
supervising attorney asked the nonlawyer to work on 
the case even after the conflict came to light. Id. Strasburger’s efforts after discovering the conflict 
parallel and reinforce its thorough attempts to preempt the conflict in the 
first place.
            
For these reasons, and without hearing oral argument, see Tex. R. App. P. 52.8(c), we 
conditionally grant mandamus relief and direct the trial court to vacate its 
order granting the motion to disqualify. We are confident the trial court will 
comply, and the writ will issue only if it does not.
 
OPINION DELIVERED: July 1, 2011






[1] During 
the hearing, Trans-Global’s counsel agreed when asked by the court if he took 
“[opposing] counsel at his word that in fact that’s true, he did not get any 
confidential information from this paralegal?” The judge later reiterated, 
without objection from Trans-Global’s counsel, that 
Trans-Global was “conceding that on the record . . . the only evidence I have is 
that no confidence was shared at the second law firm.”

[2] Because 
the parties point to no evidence in the record as to the size of either firm, we 
do not include this factor in our analysis.